Good morning. May I please the court honor Jordan on behalf of the appellant Jennifer Thompson. This case involves the retaliatory arrest and jailing of an elected city council member who for several months prior to her arrest had been a thorn in the side of the mayor. After Ms. Thompson's inquiries into the propriety of city policies and procedures caused several high-ranking city officials to resign, the mayor planned to install his handpicked replacements at a critical city council meeting. In retaliation for Ms. Thompson's past political speech and to prevent her from casting her opposition votes, the mayor lodged a criminal complaint and directed police to arrest Ms. Thompson before the meeting began to ensure that she was sitting in a jail cell during these critical votes. Despite this framework from which Ms. Thompson's first, fourth, and fourteenth amendment claims arise, the district court dismissed the complaint under Rule 12b-6. This decision should be reversed because it flowed with several legal errors, three of which I will discuss today. First, I will address the district court's erroneous conclusion that the complaint failed to allege a Manel policy. Second, I will explain why probable cause for the tampering charge was absent. And third, I will address why the district court's conclusion that the existence of probable cause, even if it exists, which we is inconsistent with the Supreme Court's holdings in Mount Healthy, Lozeman, Yemez, and Gonzalez. Turning to the Manel claim first, the district court erroneously failed to accept as true the allegations in the complaint, which is the correct 12b-6 standard, establishing that the and the police chief were Manel policymakers and that they each had participated in the events leading to Ms. Thompson's constitutional deprivations. This failure to correctly apply the 12b-6 standard led to the erroneous conclusion that the complaint failed to allege a Manel policy. When those facts are accepted as true, the facially unconstitutional policies themselves are clearly alleged. The first policy is the mayor's decision made with retaliatory animus to initiate the criminal proceeding as a pretext to orchestrate her arrest and to prevent Ms. Thompson from participating in a city council meeting. The second unconstitutional Manel policy was the police chief's acquiescence to the use of his police officers to retaliate against citizens who spoke out at a city council meeting. Those are the two Manel policies that the complaint alleges. Therefore, the district court's conclusion that there was no Manel policy in this was error. Second, without analyzing the elements of a misdemeanor tampering with a government record offense, the district court erroneously determined that the probable cause affidavit contained no false or misleading information and held that the independent intermediary doctrine applied to cut off causation. That was error. The district court reached this conclusion by ignoring and failing to accept as true several alleged facts critical to the probable cause determination, including that the district attorney had advised these officers that Ms. Thompson did not commit a crime when she edited a copy of a city council agenda. The third error committed by the district court was that the district court erroneously concluded that the existence of probable cause barred Ms. Thompson's retaliatory arrest claim. It does not. In a string of Supreme Court cases that go back to Mount Healthy, to Lozeman, to Nieves, and ends with Gonzalez, the Supreme Court has repeatedly instructed lower courts that in First Amendment cases, allegations establishing that an adverse governmental action is substantially motivated by retaliatory animus for protected activity sufficiently pleads a plausible First Amendment claim so long as causation is supported by objective as opposed to subjective facts. Can I move on to something else that I have a question about? Is that okay? Absolutely. We're talking about, I want to move to the Frank's liability. Are the claims against Cantrell and McGee pleaded to bring them within the compass of the Frank's liability and what in the complaint is enough for that? So in their individual capacity or their official capacity? Individual. So the individual capacity claims were alleged with respect to them because we had a conspiracy cause of action in the lower court. That one we did not- You didn't appeal that. We did not appeal that. So that goes away too. The Frank's claims against Cantrell and McGee, he individually is gone, are gone. Yes ma'am. Okay. That's helpful. But with respect to the other officers, the Frank's claim is still part of the case. We did allege faults that the problem cause affidavit contained several fault statements, but I wanted the court to focus on three specific ones in the problem cause affidavit that was Arbuthnot. At ROA 375, paragraphs four, five, and six, Arbuthnot repeatedly made reference to a forged agenda or a forged signature. And our position has been that the agenda that my client edited was a copy, not the original. And that the original had been posted in front of city hall where it remained in a locked glass box untouched. And because of the agenda that my client edited to add her agenda items was a copy, it did not qualify as a governmental record. But more importantly, with respect to the Frank's claim, the references to forging an agenda, forging the secretary's name, those were fault statements knowingly made by Arbuthnot because we've alleged that the district attorney expressly told them that she had not committed forgery. This was not a forgery. This was not a violation of the tampering statute at all. And they continued to pursue that even after the district attorney told them that they had no case. Can we pivot again for just a second? Is the Carlswell v. Camp issue about the discovery, is that moot? No, your honor. I don't believe it is. We raised that here on appeal just to bring it to the court's attention because I do believe it's creating an incentive from the governmental entities to withhold information pre-suit and then rely on Carswell to continue to fail to disclose public information that otherwise would be required to be disclosed under the Texas Public Information Act. Is there a live discovery dispute? Well, yes. So we did serve a discovery on the city and they did not respond fully to all of the requests. We asked for communications by and between the defendants and the city secretaries and they did not produce that. And so before we could file a motion to propel, the individual defendants filed a motion to stay and the court granted that stay as to all defendants, including the city. And so the district court reads Carlswell to say that you can't get any discovery against the city if you have qualified immunity claims, even if you have- That's correct. The claims directly against the city. That's correct. Okay. And do you believe Carlswell says that? I do not. And that's what we argued below. We argued that Carlswell was limited to seeking discovery from the qualified immunity defendants and not from the city itself. It's trying to give immunity from suit for those people who might be entitled to qualified immunity. That's correct. And since the city is not entitled to qualified immunity, the stay that was granted here, which included the city, was in error. We did preserve that. There is a transcript in the record. I believe it starts at 1163. But don't you think if we sent this back, and I'm not foreshadowing, that that would get worked out? Well, my concern, Your Honor, is that this is not going to happen just in this case. It's going to happen repeatedly in other cases. And I think it's important for the court to clarify Carlswell and to say affirmatively that that reading of Carlswell that was proposed here by the city was incorrect and was too broad. The reading of Carlswell was too broad to include the city. Thank you. If the court has no further questions, I will reserve the rest of my time. Thank you. You've saved time for rebuttal. We'll hear from Mr. Isaac Clement. Yes, Your Honor. May it please the court. My name is Chris Clement. I have the privilege of being here representing the APLEI individual city defendants, McGahey, Cantrell, Arbuthnot, and Templer. We've split time with the other APLEI. I will be handling the issues related to the Frank's probable cause and the Inebus Exception with Carlswell and Monell being handled by co-APLEI. I want to start by bringing the court's attention to a key fact that has to do with whether or not there was knowledge that there was no crime committed. Importantly in this case, the affidavit was not submitted and the probable cause warrant was not obtained until after the county attorney's office signed off on the affidavit. That is something that plaintiff herself alleges in her complaint. In her complaint specifically, I'm going to be 55 to agree that before Arbuthnot was affidavited, it was approved by the county attorney's office. Now the distinction with the district attorney's office is the district attorney's office was looking at a forgery. Now, of course, what ultimately was found as far as probable cause in the affidavit and the arrest warrant was tampering with the government record. So I want to start by talking about probable cause because that's where appellants started as well. With regard to probable cause, there are some key facts that are in here that were not disputed, that were not in contention. And a big one of those facts is the publication of this altered document. And the timeline for how we got here and the emails that are also part of the record and which were reviewed by the officers prior to the arrest warrant are telling. And there's a big quote that I want to read to the court that is on page 366 of the record, and this is an email from Wisconsin. And she states, if you are not going to revise and repost, please let me know and I will do it myself. This is important for the finding of probable cause because it's not in dispute that after the official agenda was circulated amongst the city council members, after it was published to the board outside. But again, we're in 2023-2024. You also have to publish it online. After it was published online on the city's website, which is also an official agenda. An electronic copy can also be an official agenda if it's published online. The plaintiff sent, after those things happened, the altered version. We're not talking about an altered Word document. As the record reflects, this is an altered PDF. And the altered PDF adds the additional items that were untimely submitted. What difference does it make if it's a Word document or a PDF, which are readily converted between multiple documents? Well, I would argue, Your Honor, the difference is a Word document can be a draft. As far as a PDF, it's usually more of a final document. And in this case, that would matter because ultimately, that document was published on Facebook. By whom? By Mr. Poppenfuss. Exactly. Yes. And it didn't email cited him. I'm sending this to the secretary asking that she add it to the agenda. Yes. And so where is it to her to say, well, this is now public. This is the new agenda. I mean, to me, she didn't tell him that this was the new agenda. Well, there is no specific evidence in the record about what her communications were with Mr. Poppenfuss. We do know that he was copied on this. He was provided with a copy of this. He did ultimately publish it from his official government Facebook page as though this was the actual agenda for the meeting. So with that regard, that is where we're having a probable cause. As to him, maybe, but not her. Well, the issue is that it was the tampering with the finalized record. The email clearly said, here are my proposed additions to the secretary. Please amend the agenda and publish this. That's all she sent to him. She didn't say this is the final agenda. She didn't tell him to publish it. Correct. And this is where we go to the difference between there being a probable cause and there being a final, beyond a reasonable doubt. Where's your probable cause to say that she was the publisher of a forged agenda? I don't see that in this email. And he published it. She didn't. Correct. And the publication isn't part of what would be required of her to be an altered government record. So the government record here would be the final agenda that was provided to her, which she returned back with the city secretary's signature still there and with the city seal. With the request that it be amended.  That's not a forgery. The issue here is whether or not there's a forgery. Not an alteration. It's a request. That is one interpretation, Your Honor. Let's see how else you can interpret it. Well, the magistrate judge, in reviewing the documents, felt that those facts, as they were alleged, were enough for there to be a probable cause. And that's part of there being an intermediary. The question here under Frank's is whether there were any sort of false statements that were made, that there were any sort of material omissions that were made. Now, on appeal, the material omissions that were discussed in the lower court were not brought before the Supreme Court in the briefing. And when we're talking about the material misstatements, we go back to the fact that we're looking at the Frank standard. And what the Frank standard would say is, well, where is the false statement? And in the warrant affidavit that was submitted by Arbuthnot, the fact of whether or not this was a forgery or not is not a material to the finding of whether or not there is a tampering. And that was something the trial court expressly considered. And the trial court expressly found, yeah, that is not a material, even if that is true. The trial court actually went into some discussion about, you know, there may be some consideration more from a common use of the phrase forgery and not from a specific criminal allegation. Because again, the warrant that was sought was not for forgery. It was for tampering with the government record. And again, I want to bring the court back to the question. I don't see how there's a tampering with the government record here. She's got her own document that she received. And she said, I would like these changes made. And she's sending them to somebody who can make changes. That's not purporting to say that that's the document. She's never said that was the document in the record here. Yes, Your Honor. And I understand that. The argument that the individual defendants would bring to the court is, again, we're looking at this as under the Frank standard. But they know better. They have all the facts. They have her notation on the email, the note that says, I'm asking that these additions be made. That addition makes, totally changes everything. Even, I mean, I don't know if she even emailed it without that, whether that would be enough. But the fact that it has that is a material, very material to whether or not that would be an appropriate tampering. I understand, Your Honor. That would, you know, if the court wants to consider that a material remission, the issue is that was not brought before the court. Appellant in bringing their briefing did not allege that was a material remission in their briefing. That is not a raised before this court. The question here is whether there are material misstatements, specifically the material misstatements that were discussed by opposing counsel when she was up here with the court. So with regard to that, to the Frank standard, again, this was submitted to a magistrate judge. A magistrate judge reviewed it, determined there was sufficiency for probable cause. What was the allegation regarding publication? The issue regarding publication is, was, again, that Poppifus was the one that published it. Well, again, how does that establish probable cause as to Thompson? The magistrate judge found in issuing the warrant, in reviewing the warrant and issuing the probable cause warrant, that there was sufficiency there to show that there was the tampering with the record. I mean, again, that's going back to what this court is reviewing. Is that Frank standard and whether there is an issue under Frank's? Frank's is looking at that material omission. We don't have a challenge to specifically whether or not the magistrate judge, this isn't a warrantless search where these are what the officers are talking about the probable cause. There was an affidavit submitted, an independent intermediary looked at it and said, I find that there's probable cause, issue the warrant. But there were material omissions that if a reasonable magistrate would not have found probable cause, if the operative government record, they know that it's under a glass case, then that wasn't shared with the magistrate. I'm sorry, what was the... They didn't share with the magistrate judge that the actual government record is under the glass case. And so they couldn't have been tampered with. I mean, this is not stealing the Declaration of Independence and substituting in the copy from the gift shop. I'm not trying to make this light of a serious situation in a community, but this is under a glass case. It's the official thing. Nobody's taking it out. With due respect, Your Honor, that's a limited view of what the official record would be in modern parlance. Well, it's the Texas Penal Code 37.01.2, which defines what the government record is. You have the official record is the one that's under seal, but you also have within cities, they post their agendas online. Citizens are looking online. Those are not the official government records under the Penal Code, are they, sir? Under the Penal Code, I'm not particularly familiar, Your Honor, on that part of it, but one thing that I will again bring to the court's attention is, again, this would be a challenge to whether or not the... Well, first of all, these alleged material omissions that the court is talking about were not brought before this court. Well, didn't somebody tell the court that Thompson had published it? No, Your Honor. What was in the affidavit was that Poppinfuss had published it to his Facebook page. The only thing that Thompson did was provide it to Poppinfuss, which is not something that's in dispute here. I see my time is up, but again, I just want to reiterate the fact that, again, this court is limited to the arguments that have been presented by the appellant. These material omissions, there is nothing in appellant's challenge, there being material omissions as being an issue here, and whether or not there is sufficiency of probable cause, again, that would be a question that we have an independent intermediary in the magistrate that reviewed the facts and found that there was sufficient probable cause to issue this particular warrant, because this was not a wantless arrest. Thank you. My time is up. Whether there are any other questions or anything along those lines to address, I sort of expect a little bit of that in the battle. I did too, but thank you very much. Hey, this is Christopher Livingston on behalf of the City of Gosling. Going to appellant's first point regarding whether there was a policy, it's been taken in most light, most favorably to the appellant. Her factual allegation is that the mayor and the police chief created a custom that was never ratified by the city council. So appellant's pleadings allege that she and a majority of the council were consistently fighting against these individuals. Thus, the district court correctly found that appellant failed to plead facts sufficient to show an official nominal cost or custom. Section 1983 does not permit vicarious liability for municipalities. A municipality can be held liable solely, cannot be held liable solely because of employees at court. In other words, a municipality cannot be held liable under section 1983 on a respondent superior theory. There must be a policymaker, an official policy or custom, and a violation of constitutional rights whose moving force is the policy or custom. Here, there seems to be a fight between, for control over the governing body. An appellant has control of the governing body with her three-person block on the city council, and the mayor is apparently acting ultra-virus in allegedly having a retaliatory policy custom. That does not create liability on the city because a custom consists of actions that have occurred so long and with such frequency that the force of conduct demonstrates the governing body's knowledge and acceptance of the conduct. What about Jordan's blue folder, and why isn't that enough to show something more than the single incident involving her? He wrote that he was instructed to target city council persons for code violations in an effort to disparage them, and that he himself was threatened with termination if he did not and that they have this blue folder as a whole folder of prior reports made to city council about the department retaliating against citizens because it's true speech. Yes. Why isn't that evidence of the policy? I think it's not evidence of a policy because again, it's directions from the, it goes to a custom again. It is addressing what the police, what the mayor, and the city administrator, and the city attorney told the police chief to do. And again, appellant's block on the governing body actually, according to her pleadings, successfully removed the city attorney, the city administrator, and then there was a dispute over the police chief and which police chief should be in charge. But again, the governing body never ratified the custom that was being created, and in fact was fighting against it consistently. Is your position that the governing body is the city council? Yes, it is that the governing body is the city council. And specifically with regard to police situations, Texas local government code 341.001 says a police force in a type A general law municipality, A, the governing body of the type A general law municipality may establish and regulate the municipal police force. So statutorily, it's the governing body that controls the police force, even though again, the argument is that the mayor was acting ultra-virus and trying to create customs to retaliate against certain citizens. Whether the blue folder actually shows that, well, I guess we have to go based on the pleadings here, whether it plausibly alleges that the blue folder does, and she makes a conclusive restatement that it does, but there's no showing. There's no showing that other members of the community were actually arrested. There's no showing that other members of the community were being retaliated against, that there was some sort of pervasive and consistent retaliatory arrest situation going on in the community. Well, the chief testified to it in a meeting. Why isn't that with the mayor, city attorney, and the city administrator all present? Why isn't that some showing that it's happening? Right, and it's the police chief after he has been fired or has resigned following some racial discrimination. Right, but you can argue, well, he's not credible, but it is a showing. Fair enough. It is a showing, but again, the council is still taking movements to stop it from happening. They are replacing the city administrator. They're actually, they're replacing the city secretary too, which is where this all stems from. Additionally, the appellate must show that the government bodies delivered a difference to the custody. A plaintiff cannot merely identify conduct properly attributable to the municipality, but must also plausibly allege that the governing body through its deliberate conduct was the moving force behind the house. Again, we have a situation here where the city, the governing body is not ratifying what the mayor and allegedly the police chief are doing. Therefore, Judge Godbee has correctly determined as he went through the motions and the claims before us that there was no policy or custom on behalf of the city. Basically, what Judge Godbee saw was that there was a single decision that she's going to, a single decision allegedly by the mayor to deprive her appellant of her federal rights. When she points out that they lack probable cause, that there was a retaliatory animus that was going on, she again points to a series of actions by multiple people unconnected to any retaliatory motive. Most importantly, she points out that Mayor Pro Tem Poppinfus was also speaking out against the police chief and the mayor, that he was engaged in the same kind of actions that she was. In fact, he was not arrested. He was not retaliated against. Are you going to discuss the Carswell issue? It seems that perhaps there's an over-reading by the district court, perhaps, of the case. Let me touch on the Carswell. What happened was, first off, we did respond to appellant's first request for production and her second request for production. We produced documents to those. We did insert objections, but we produced documents. She has not moved to compel. We have not had any further discussions about turning those documents. So there's no issue that the court is not refusing to make you produce because of the disopinion? I do not believe so. What the court did against what the city asked was order the city to produce the initial disclosures. Once the court had made that order... But what about other written discovery? You should have to produce written discovery on the Monell claims, shouldn't you? We do not believe we should. Why? It's because the individual defendants have asserted qualified immunity. Right. They may have qualified immunity and those may carry on, but as to your Monell claims against the city, not all of them. I mean, go ahead. So it's an end around the qualified immunity. Qualified immunity is supposed to protect the individuals from both suit and liability. Right, but it's not supposed to stall out the whole case. Right, but the plaintiff made a choice. The plaintiff made a choice to suit both the city and the individuals. And so you're saying that no discovery written can take place until after... You don't have to produce any documents until it's adjudicated whether they have qualified immunity? Is that your position? That is our position, yes. This case does not say that. No, it doesn't. I don't think it's actually in front of you. I don't think that that is in front of you at all. Okay, well, they have it briefed. They have it briefed, but there's... But Carlswell doesn't say that, that they don't get any written discovery until after it's adjudicated on qualified immunity. We've done... Yeah, that's not... Yeah, if you go all the way back to line boondocks, it sounds like that's what we're talking about when you do this special procedure when Carlswell... Out of time, let me continue. When you get to the special procedure, you have to first determine at the outset whether there is qualified immunity. And that is without discovery unless the district court says, we need additional discovery to determine the qualified immunity. Therefore, we can't have any discovery at all during that time. Although in this case, there was discovery. We did produce that. Initial disclosures. And also responses to their request for production. Okay, thank you. Ms. Jordan, you said time for rebuttal. Just to clarify, Your Honor, so we did serve them with written discovery requests as soon as we filed the lawsuit. We did that because before we filed the lawsuit, we served them with a public information request seeking all of the police reports related to the arrest and the investigation. And they raised a litigation objection. They said, you have to file your lawsuit before... Because there's a litigation exception in the PIA that allows them to withhold those documents. So we went ahead and filed the lawsuit thinking, okay, once we filed the lawsuit, they're going to give it to us once we serve them with the discovery. And they refused. And they objected based on Carswell. Meanwhile, the PIA proceeding was ongoing. They had requested an opinion from the Attorney General's office. And the Attorney General eventually said, okay, this litigation is pending. They were relying on another lawsuit that has been filed and not by us, but by a different attorney, but that case had already terminated. So it wasn't pending as they represented to the Attorney General's office. And so the Attorney General's office thought it was pending. So they said, okay, you can produce it, but you have to produce it. And they produced it redacted. All of these police reports were redacted. But I mean, was that adjudicated in the district court or is this all premature and we shouldn't even be worrying about this now? No. So we raised it in the district court in support of our motion for leave to file our second amended complaint, because when we finally received the documents, they had already filed a motion to dismiss. And I had served them with discovery requests. And I said, if you don't give me these documents so that I can respond to your motion to dismiss, I will be filing a motion to compel. That's when they submitted the unredacted police reports. And that's why I had to attach them to an appendix when I responded, because by then we could not amend as a matter of right. So I was going to have to seek leave to file our second amended petition, I mean, complaint. So in the meantime, I had to respond to their motions to dismiss. And so, which I did, but then I attached- Did you want to talk about something else? Yes. So the city, again, is trying to say that the city council is the policymaker here, but we have alleged facts demonstrating that the mayor is a policymaker for a Taipei general law municipality, because state law gives him the authority, the final decision-making authority, to punish, prosecute, and to direct arrests. And so because he is the final policymaker in the city of Godly for those purposes, he is the relevant policymaker here. And this court has already held that police chiefs are policymakers when the department general orders make them a final policymaker. And here, in the record at ROA 475, the general orders make the police chief, and I'm quoting, a policy is a statement of the department's philosophy on a given issue. Department policy is determined by the chief of police. And so he is a final policymaker with respect to department policy. And we've alleged facts that show that the police chief, Jordan, which was Ken Trowell's predecessor, confessed, as the court has already indicated, to allowing his officers to be used to retaliate against residents who spoke out at city council meetings. That's at ROA 832, paragraphs 30 through 31. We also allege that within the span of three months of Jordan's resignation, at least four more examples of retaliation occurred under Ken Trowell's watch, and he had only been the police chief for those three months. And these examples included the race allegation by police against Jordan, the harassment allegation by police against Papin Fuss, the threat of retaliation by police against Ms. Thompson, and then her arrest. And so in that short period of time, Ken Trowell had been elevated from sergeant to police chief, and these retaliation acts continued under his watch. And so that's why we think that the policy, and in addition, we don't have to show a series or a pattern when the actual policymakers are participating in the constitutional violations. And that's what we argued in our brief. Thank you. We have your argument. We appreciate all the arguments in this case. This case is submitted. The court will stand in recess until tomorrow morning at 9 a.m. Thank you.